IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

MICHAEL W. SHELLEY, *et al.*,       )
                                     )
          Appellants,                )
                                     )
v.                                   )       CASE NO.  1:20-cv-505-RAH-KFP
                                     )              [WO]
UNITED STATES OF                     )
AMERICA, *et al.*,                   )
                                     )
          Appellees.                 )

## MEMORANDUM OPINION AND ORDER

Michael W. Shelley and Hudson T. Shelley have appealed from the final determinations of the Director of the United States Department of Agriculture's (USDA or the Agency) National Appeals Division that upheld administrative hearing officers' decisions to deny their respective claims for crop disaster payments under the Noninsured Crop Disaster Assistance Program (NAP). The issues have been fully briefed, and each party[1] has moved for summary judgment. (Docs. 23, 26.) For the reasons below, the Shelleys' motion is DENIED, the USDA's motion is GRANTED, and the Director's decisions are affirmed.

## I. BACKGROUND

The Shelley family has operated a farm for over 100 years. The current

---

[1] The Shelleys filed a Memorandum Brief in Support of the Petition for Judicial Review. (Doc. 23.) The Court will treat the brief as a motion for summary judgment.

generation of farmers includes Michael, Todd, and Hudson Shelley.

On January 31, 2018, Michael and Hudson, through Todd as power of attorney, separately enrolled certain vegetable crops in NAP for the 2018 growing season at the Jackson County, Florida, FSA office. NAP provides financial assistance to farmers of non-insurable crops to protect against natural disasters that result in lower yields or crop losses or prevent crop planting. NAP is administered under the general supervision of the Commodity Credit Corporation and is carried out by the local state and county committees of the FSA. *See Mahon v. United States Dep't of Agric.*, 485 F.3d 1247, 1253 (11th Cir. 2007); 7 C.F.R § 718.2. To avail themselves of program benefits, farmers (called producers in NAP) must submit an application (form CCC-471) and pay a service fee and a premium.

As pertinent to Michael and Hudson, Todd met with Sarita Bryant, the county FSA technician, to enroll their crops. Todd has no recollection of meeting with Bryant or speaking with her about the crop-types he wished to enroll in NAP on behalf of Michael and Hudson. Although he believes he would have orally instructed Bryant to enroll crookneck squash because the Shelley family had grown that crop-type for years and because his normal course of practice would have been to tell the technician to enroll all crops, including crookneck squash, Todd acknowledges that it was "possible" that he failed to tell Bryant to enroll crookneck squash.

According to Bryant, she inputted all crop-types[2] that Todd verbally identified for her, as was her customary practice.  Among the crop-types that she inputted into the system, and therefore on the NAP applications for Michael and Hudson, were two types of squash (summer and zucchini) and two types of watermelon, and as to Michael, two types of greens (collards and turnip).

Crop-types are given unique identifiers in the system and on the NAP application.  For example, there are multiple types of squash, each with its own crop-type identifier: summer squash as SUM, zucchini squash as ZUC, and crookneck squash as CRK.[3]

Under the eleventh column of their NAP applications, summer squash and zucchini squash were separately identified for both Michael and Hudson.  Crookneck squash was not. If it had been, it would have been identified on a separate line with a "CRK" designation under column eleven, like the summer squash and zucchini squash designations.

On both applications, Todd signed as power of attorney for Michael and Hudson and further verified that "all information entered on this Application for

---

[2] The NAP handbook (HB-1-NAP, Par. 301(A)) states that the "CCC-471 must be filed by the producer in the administrative county by pay crop, pay type, and coverage options." (Doc. 21-1 at 185; *see also* Doc. 21-1 at 56.)

[3] A Growers Receipt contained in the record shows that there are multiple types of squash that can be grown: zucchini, summer, crookneck, butternut, acorn, spaghetti, and buttercup.  (*See* Doc. 21-1 at 127.) Thus, while these all are squash (a crop), each is a different crop-type or squash-type.

Coverage (CCC-471), whether or not personally entered by me, is true and correct." (Doc. 21-1 at 181; Doc. 22-1 at 143.) In signing the applications, he also acknowledged the following: "I acknowledge all of the following . . . the election or buy-up coverage is as shown on this application"; "As provided in statute or regulation, failure to provide true and correct information may result in the invalidation of this application, a determination of noncompliance or ineligibility, or other remedies or sanctions"; "the information will be used to determine eligibility for program benefits in response to an application for coverage"; and that the "producer signing this application applies for coverage on the producer's share of noninsured crop(s) by pay crop/pay type." (Doc. 21-1 at 181–82; Doc. 22-1 at 143–45.)

On July 5, 2018, Michael and Hudson submitted notices of loss (form CCC-576) to the USDA for disaster events associated with their respective crookneck squash crops.

The Jackson County, Florida, FSA office denied their claims via letters dated June 27, 2019, on the ground that, according to their NAP applications, NAP coverage for the crookneck squash had not been purchased by the application closing date of February 28, 2018.

Michael and Hudson jointly appealed to the National Appeals Division through an administrative appeal procedure afforded to them under NAP. A hearing

officer was appointed and held a joint hearing on October 16, 2019, and November 5, 2019.  The hearing officer issued appeal determinations on December 19, 2019, in which he concluded that the county FSA office's decisions to deny the crop claims were not erroneous.

The Shelleys appealed again, asking for director review.  In his decision, the Director addressed the sole issue of whether the Shelleys were entitled to equitable relief. In finding that they were not entitled to such relief, he noted that crookneck squash was not listed on the NAP applications, that Todd had testified that it was possible that he had failed to tell the FSA technician to include crookneck squash on the NAP applications, and that the Shelleys had the responsibility of reviewing their NAP applications and ensuring their accuracy before signing and submitting them for NAP coverage. This decision constituted the USDA's final decision under 7 U.S.C. § 6999.

## II . STANDARD OF REVIEW

Summary Judgment is particularly appropriate in cases in which a district court is asked to review a decision rendered by a federal administrative agency. *Mahon v. United States Dep't of Agric.*, 485 F.3d 1247, 1253 (11th Cir. 2007). However, even in the context of summary judgment, an agency action is entitled to great deference. *Id*.

Judicial review of a final agency determination is governed by the Administrative Procedure Act, which provides in part that a court may set aside an agency's "action, findings, and conclusions" if they are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law or unsupported by substantial evidence. *Id.* (citing 5 U.S.C. § 706).  *See also* 7 U.S.C. § 6999; *Payton v. United States Dep't of Agric.*, 337 F.3d 1163, 1167 (10th Cir. 2003).

"To determine whether an agency decision was arbitrary and capricious, the reviewing court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *N. Buckhead Civic Ass'n v. Skinner*, 903 F.2d 1533, 1538 (11th Cir. 1990) (internal quotations omitted). The arbitrary and capricious standard is exceedingly deferential, *Fund for Animals, Inc. v. Rice*, 85 F.3d 535, 541 (11th Cir. 1996), and "[t]he reviewing court is not authorized to substitute its judgment for that of the agency concerning the wisdom or prudence of the" decision, *N. Buckhead*, 903 F.2d at 1539. "Rather, the 'task of the reviewing court is to apply the appropriate ... standard of review ... to the agency decision based on the record the agency presents to the reviewing court." *Pres. Endangered Areas of Cobb's History, Inc. v. United States Army Corp of Eng'rs*, 87 F.3d 1242, 1246 (11th Cir. 1996) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985)) (internal quotation marks omitted).

## III.  DISCUSSION

The parties have filed opposing summary judgment motions that address two primary issues — whether the Director ignored evidence confirming that the parties intended to include crookneck squash in the NAP application and whether the Director improperly failed to award equitable relief.

### A. Preserved Issues

The Shelleys first and primarily argue that the Director acted arbitrarily and capriciously in "ignoring analysis of the collateral documents to determine the true intention of the parties." (Doc. 23 at 24.)  In particular, the Shelleys focus on certain post-application documents, including commodity, acreage, and inspection loss reports, which according to them, confirm that they intended to enroll crookneck squash in NAP because all of these documents referenced their crookneck squash crop.  They further argue that these documents constitute "collateral documents that should be incorporated into the contract to determine the intentions of the parties regarding the crops to be insured." (Doc. 23 at 18–19.)

The USDA argues that the Shelleys waived this issue — that is, consideration of certain extrinsic or collateral documents — by failing to raise it with the hearing officer and the Director during the administrative proceedings below. Stated differently, the Shelleys did not properly issue-exhaust the issue.

"Under ordinary principles of administrative law, a reviewing court will not consider arguments that a party failed to raise in [a] timely fashion before an administrative agency." *Mahon v. United States Dep't of Agric.*, 485 F.3d 1247, 1254–55 (11th Cir. 2007). In *Mahon*, the Eleventh Circuit held that, due to the adversarial nature of the NAD procedures and for various policy reasons, parties cannot raise new arguments to a district court on appeal from a final NAD decision that were not raised during the course of the administrative proceedings below. *Mahon*, 485 F.3d at 1256. This holding is consistent with holdings in other circuits. *See Care Net Pregnancy Ctr. of Windham Cnty. v. United States Dep't of Agric.*, 896 F. Supp. 2d 98, 112 (D.D.C. 2012) ("since issue exhaustion is required in administrative proceedings before the Appeals Division, Care Net had to raise more than just the 'substance' of its . . . claims. It was instead obligated to "'forcefully present[]' its argument before the Appeals Division, 'or else waive the right to raise those arguments on appeal' before this Court."); *Ballanger v. Johanns*, 495 F.3d 866, 870 (8th Cir. 2007) ("We need not consider arguments the parties failed to raise before the agency."); *Bass v. Vilsack*, 595 F. App'x 216, 222 (4th Cir. 2014) (per curiam) ("The Basses had ample opportunity to raise the minimal effects claim at each phase of the administrative proceeding and before the NAD, yet they failed to do so.").

The Court has scoured the administrative record for any reference or argument

by the Shelleys that the parties' intent should be determined by considering extrinsic documents or that these same documents constitute part of the overall NAP application and contract, and has found nothing. While the Shelleys did argue that their crookneck squash crop should be covered because of a coding misunderstanding or omission error by the FSA technician, they did not raise any issue with the hearing officer or Director regarding extrinsic documents. Because it was not raised, the USDA could not state its position or develop a record on the issue. And for that same reason, it was never considered by the hearing officer or the Director. It was only in their briefing to this Court that the extrinsic document issue first was advanced. By first raising this issue when they did, the Shelleys have waived it, and therefore they are precluded from raising this issue before this Court. *See Mahon*, 485 F.3d at 1256.

The Shelleys attempt to side-step the waiver issue by arguing that the issue was before the Director because he had the entire record available to him. However, the fact that the Director had in his possession the entire administrative record for both Michael and Hudson, which may have included these extrinsic documents, does not change the outcome. It is not the Director's obligation to, *sua sponte*, scour the administrative record and search for arguments that a party fails to advance or make. Nor is it this Court's obligation. *See Resol. Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).

Under ordinary principles of administrative law and the Eleventh Circuit's guidance in *Mahon*, this Court will not consider issues that were neither raised nor developed below. Therefore, the issue concerning the parties' intent as evidenced by certain extrinsic documents has been waived and this Court will not consider it.  And further, it cannot be said that the Director acted arbitrarily and capriciously in failing to consider, *sua sponte*, an argument or issue that the Shelleys never raised with the hearing officer or with him. *See, e.g.*, *Fleming v. United States Dep't of Agric.* 987 F.3d 1093, 1101 (D.C. Cir. 2021) ("And we certainly could not conclude that the Judicial Officer acted arbitrarily in failing to identify and consider an issue never presented to her.").

### B. The Mistake

The Shelleys argue the Director acted arbitrarily and capriciously in not reversing the hearing officer's decisions to deny their crookneck squash claim. Aside from the extrinsic document issue, which they failed to properly preserve, the Shelleys claim they orally told the FSA technician to include crookneck squash, and there was a mistake or error by the technician in not including it.

The USDA argues the claim denials and the Director's failure to reverse them were well reasoned, supported by the record, and not arbitrary and capricious or otherwise not in accordance with the law. It emphasizes that the NAP applications did not identify crookneck squash as an enrolled crop-type, that NAP regulations

10

precluded payment for unenrolled crops, that Todd testified at the hearing that it was possible that he had failed to tell the technician to include that crop-type, and that Todd was obligated to review the NAP applications for accuracy before submission.

Although the USDA does not raise it, it is arguable that the Shelleys have preserved any error by the Director in not reversing the hearing officer on the merits of the hearing officer's decision. A review of the Shelleys' appeal submission for director review reflects that the Shelleys, while arguing that a mistake had been made, did not argue that the Director should reverse the hearing officer because of error by the officer.  Instead, the Shelleys' submission used the alleged mistake as the basis to seek equitable relief from the Director. And it was only that request for equitable relief that the Director considered.[4]  Under *Mahon*, having not claimed error by the hearing officer with the Director, this Court generally would be precluded from considering any error by the hearing officer or the county FSA office. *See Mahon*, 485 F.3d at 1256. But since the USDA does not raise issue exhaustion or waiver on this issue, the Court will consider the Shelleys' substantive arguments about technician error. *See Aragon v. Tillerson*, 240 F. Supp. 3d 99, 117 n.14 (D.D.C. 2017) ("a party may waive its own waiver argument by not raising it

---

[4] In his decision, the Director stated: "On Director review, Appellant does not challenge the merits of the Administrative Judge's determination and requests only that I exercise my discretionary authority to grant equitable relief. Therefore, I will not review the merits of the Administrative Judge's determination and will focus solely on Appellant's request that I exercise my equitable relief authority under 7 U.S.C. § 6998(d)." (*See* Doc. 21-1 at 82.)

in a timely fashion."); *United States v. Morgan*, 384 F.3d 439, 443 (7th Cir. 2004) ("A waiver argument, after all, can be waived by the party it would help.").

On the merits of the underlying claim denial, there was no error, regardless of the standard applied. This outcome is largely governed by the clear language of the NAP regulations. 7 C.F.R. § 1437.7(a) states that "with respect to each crop, . . . producers must file an application for coverage under this part in the administrative county office by the application closing date." 7 C.F.R. §1437.7(a). *See also* Doc. 21-1 at 184–85. The regulations also make clear that properly completed and submitted applications for NAP coverage "will be recognized by FSA." 7 C.F.R. §1437.7(l). Thus, to be enrolled and recognized for NAP coverage, each crop must be listed on an application timely submitted to the agency office. No regulation provides for the recognition of a crop that is not identified on a timely submitted NAP application. And as to the state and county committees and their representatives, they have no regulatory authority or discretion to modify or waive any NAP regulation. 7 C.F.R. § 1437.2(b); 7 C.F.R. § 11.10.

Considering these regulations, it cannot be said that the Jackson County FSA office erred in its denial of claims for a crop that were never identified on a NAP application. It also cannot be said that the hearing officer, when presented with these facts, committed error when it upheld these decisions. And finally, it certainly was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

the law for the Director to uphold the hearing officer's decisions.

But the Shelleys argue that the Director ignored their testimony that the failure to list crookneck squash was a "mistake" made at the hands of the FSA county technician. The Shelleys' argument is unavailing.

First, the record does not show that a mistake undoubtedly was made by the FSA technician. During the hearing, Todd acknowledged that it was "possible" that he failed to tell the technician to include crookneck squash in the NAP applications, and the technician testified that she would have included whatever crop-types that Todd told her to include. Then, after that, Todd was presented with and signed the NAP applications, which did not include crookneck squash, and certified that the information on the applications was true and correct even if it had been inputted by someone else. Thus, the Shelleys' assertion of a mistake was a disputed factual issue that the Director considered, as did the hearing officer, but did not agree with. It was not ignored. That the Director and hearing officer drew different conclusions than the ones that the Shelleys desire, does not make their decisions arbitrary. *See Crutchfield v. Cnty. of Hanover*, 325 F.3d 211, 223 (4th Cir. 2003) ("This may be one permissible inference from the evidence. The contrary inference, however, is far from arbitrary or capricious."); *Ceraso v. Motiva Enter.*, *LLC,* 326 F.3d 303, 316 (2d Cir. 2003) ("[T]he fact that there may have been evidence to support an inference

contrary to that drawn by the trial court does not mean that the findings are clearly erroneous.").

And as to the extrinsic documents issue, as the Court already has concluded, the Shelleys did not properly preserve it below. They did not bring it to the Director's attention. But even that issue, if properly preserved, does not support a finding that the Director's decision was in error. The NAP regulations condition coverage on a properly and timely submitted NAP application, not what may later be identified on a commodity, acreage, or growing season inspection report.[5] And to the extent that the Shelleys attempt to invoke insurance policy rules of construction such as latent ambiguities, mutual mistakes, and parole evidence, such attempt is unavailing because NAP coverage is created and controlled by regulation, not an insurance policy and certainly not insurance policy rules of construction. And in addition, the Shelleys point to nothing in the application or NAP regulations that would arguably constitute an ambiguity or inconsistency in coverage that would permit them to consider extrinsic evidence, let alone to consider documents outside the application that are generated after-the-fact. After all, the county technician testified that she inputted what she was told by Todd to input, the application said what it said, and

---

[5] According to the USDA, the acreage reports have multiple purposes, not just as a collateral document associated with NAP coverage. For example, these reports are often used to establish annual production histories for crops that are not covered under NAP. (*See* Handbook-1-NAP (Rev. 2.).

14

Todd signed and certified its accuracy. This does not support a finding that the Director was incorrect in not, *sua sponte*, finding a latent ambiguity or mutual mistake here. It was not within the Jackson County FSA committee's authority to rewrite the Shelleys' NAP applications to include coverage on a crop-type not contained therein. While the Director arguably would have authority to do so under his equitable relief powers, the committee did not.

All told, the Director did not act arbitrarily, capriciously, abuse his discretion, or otherwise fail to act in accordance with the law in concluding that the Shelleys had not included crookneck squash in their NAP coverage. The Director's decision was supported by substantial evidence and complied with the applicable NAP regulations.

### C. Equitable Relief

The Director denied the Shelleys' 7 U.S.C. § 7996 request for equitable relief, concluding that the record failed to show that a mistake had been made by the FSA technician, that the technician had erroneously advised the Shelleys on something that they detrimentally relied on, or that the Shelleys operated in good faith.

The Shelleys claim this was arbitrary and capricious because there was a mistake made by the technician as shown for example by the extrinsic documents, that Todd as a farmer could not be expected to read and understand the NAP application, that Todd had trouble hearing and was not given an adequate

opportunity to read and understand the NAP application, and because the Shelleys acted in good faith. The Shelleys also claim the decision was in error because the Director only considered one of the good faith tests, and not both as they had requested. Finally, the Shelleys allege that the Director acted arbitrarily by ignoring evidence that showed their good faith.

The USDA argues there was no error in the Director's decision not to award equitable relief because his decision was not arbitrary and capricious and was supported by substantial evidence. In particular, the USDA points to the record, including the clear language of the NAP application, the NAP regulations, the county technician's testimony, and Todd's carelessness and lack of diligence in failing to review the application and confirm its accuracy.

The Court concludes that the Director did not act arbitrarily, capriciously, or otherwise not in accordance with the law in his handling of the equitable relief claim. First, the Shelleys' failure to properly raise the extrinsic evidence issue with the Director precludes this Court from reviewing it. And regardless, the Director cannot be said to have erred in deciding an issue that was never raised with him nor presented to him with a properly developed record. *See Mahon*, 485 F.3d at 1256.

And as to the equitable relief factors themselves, the record does not show

error by the Director in his handling of the claim.[6] First, the record does not show that the Shelleys relied to their detriment upon a misstatement or bad advice by the USDA, such that the first test for equitable relief would be potentially available to them. 7 U.S.C. § 7996(b)(1) ("The Secretary may provide relief to any participant that . . . acting in good faith, relied on the action or advice of the Secretary (including any authorized representative of the Secretary) to the detriment of the participant."); *see also* 7 C.F.R. § 718.303. Indeed, no evidence was provided regarding any detrimental reliance on agency action or advice. *See Widtfeldt v. Johanns*, 2006 WL 8448853, at *4 (D. Neb. Dec. 11, 2006) (rejecting farmer's claim for equitable relief because "there is no evidence in the record, nor does plaintiff point to any facts in the record that support an argument that he believed he was entitled to the program payments due to information given to him by an agency representative").

While the Shelleys attempt to characterize the mistake issue as one of detrimental reliance, it was not. The issue was one of an omission from an application. There was not, for example, evidence that the county technician told

---

[6] 7 U.S.C. § 7996(b) provides that "The Secretary ***may provide relief*** to any participant . . .". Thus, it is arguable that the Director's discretionary decision is not subject to judicial review because it is an area committed to agency discretion by law under the APA. *See* 5 U.S.C. § 701 (a)(2). It is also arguable that under 7 U.S.C. § 7996(f), the Director's decision is not subject to judicial review. *See* 7 U.S.C. § 7996(f); *Harmon v. United States Dep't of Agric.*, 2014 WL 12684895, at *2, n.10 (D. Mont. Jan. 23, 2014), *aff'd* 666 F. App'x 698, 701 (9th Cir. 2016). *But see Hixson ex rel Hixson Farms v. United States Dep't of Agric.*, No. 15-CV-02061-RBJ, 2017 WL 2544637, at *5 (D. Colo. June 13, 2017) (arguing that 7 U.S.C. § 7996(f) does not apply and "7 U.S.C. § 6999 provides that any final determination by the Director is subject to judicial review under the APA. The Director's denial of Hixson's request for equitable relief is thus subject to judicial review.").

Todd that crookneck squash was enrolled when it was not or that the technician told Todd that summer squash was the same as crookneck squash, thereby explaining why Todd executed the application in the manner that he did.  And further, as to the submission of the application, even Todd was less than absolute that there was a miscommunication between him and the FSA technician, as he acknowledged under oath that he may not have told the technician to include crookneck squash.

And as to the second equitable relief test, which the Shelleys claim was not addressed by the Director, the Shelleys are mistaken. *See* 7 U.S.C. § 7996(b)(2) ("The Secretary may provide relief to any participant that . . . failed to comply fully with the requirements of the covered program, but made a good faith effort to comply with the requirements"). The Director did address it. As he noted, the Shelleys were obligated to carefully read and review the application to confirm the accuracy of the information contained in it.  In other words, he concluded the Shelleys did not make a good faith effort to comply because they did not carefully review the application when they certified that they had. *See, e.g.*, *Klingenfus v. United States Dep't of Agric.*, 2001 WL 1772025, at *2 (W.D. Ky. Aug. 1, 2001) (noting that it was the farmer's responsibility, not the county office employee, to prepare, file, and sign the documents which ultimately benefit the farmer, and therefore the Director's decision to deny equitable relief was not arbitrary, capricious, or clearly erroneous). And in addition, the Director could conclude without erring that good faith efforts to comply

with NAP would require at least an unequivocal statement by Todd that he told the FSA technician to include crookneck squash, which is lacking here.

Notably, a federal court reviewing a NAD decision "must defer to the administrative law judge's choice between two conflicting views of the evidence, even if the court 'would justifiably have made a different choice had the matter been before [it] de novo.'" *Magalski v. Napolitano*, No. CV 209-117, 2010 WL 11508550, at *5 (S.D. Ga. Sept. 29, 2010), *aff'd sub nom. Magalski v. Sec'y, United States Dep't of Homeland Sec.*, 467 F. App'x 832 (11th Cir. 2012) (citing and quoting *City of Pompano Beach v. FAA*, 774 F.2d 1529, 1540 (11th Cir. 1985)). *Accord Klingenfus v. United States Dep't of Agric.*, 2001 WL 1772025, at *2 (W.D. Ky. Aug. 1, 2001) (affirming decision of the Director to not award equitable relief because it was not arbitrary and capricious even though "one can certainly see that such equitable relief might be appropriate under these circumstances."). As another court stated when affirming a NAD decision:

> Because evidence was presented and supported both sides, the Court cannot conclude that the final determination of the Director of the National Appeals Division is unsupported by substantial evidence or that the determination is arbitrary and capricious…. The decision was based on consideration of the relevant factors after having heard testimony from both sides and there is no evidence of a clear error of judgement.

*Ficus Farm, Inc. v. United States Dep't of Agric.,* No. 07-80263-CIV, 2008 WL 4057741, at *8 (S.D. Fla. Aug. 27, 2008), *aff'd*, 325 F. App'x 898 (11th Cir. 2009).

The Court sympathizes with the Shelleys as it concerns the omission of this crop-type from NAP coverage and the resulting claim denial. But this Court does not sit as a fact-finder who must resolve disputed issues of fact. *See Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) ("[W]e cannot find, or consider, facts not raised in the administrative forum, nor can we reweigh the evidence from scratch.") (internal quotations omitted).

Instead, this Court's review is narrow, and confined by a determination of whether the Director's decisions as to Michael and Hudson were arbitrary, capricious, an abuse of discretion or not supported by substantial evidence. *See* 5 U.S.C. § 706(2). And here, they were not.

## IV. CONCLUSION

For the foregoing reasons, it is ORDERED as follows:

1. The Petition for Judicial Review of Administrative Action and Hearing De Novo (Docs. 1, 23), which the Court treats as a motion for summary judgment filed by Appellants Michael Shelley and Hudson Shelley, is **DENIED**;

2. The Appellees' Motion for Summary Judgment (Doc. 26) is **GRANTED**;

3. The appeals determination of the Director of the National Appeals Division is **AFFIRMED**; and

4. The Clerk of Court is directed to enter judgment in favor of Appellees,

United States of America, the Farm Service Agency, and the United States

Department of Agriculture, and close this file.

**DONE**, on this the 20th day of May, 2022.


_____/s/ R. Austin Huffaker, Jr._____
R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE